# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

DAVID PAUL CAULDER,

    Plaintiff,

vs.                                    CASE NO. 4:02CV396-SPM/AK

DOUGLAS S. LYONS, et al,,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff has filed a complaint alleging claims against four attorneys, Defendants William C. Bielecky, Douglas S. Lyons, Marsha L. Lyons, Charles Farrar, and paralegal Dawn Sutton, for negligence, malpractice and breach of contract relating to their legal representation of him in 1998.[1] (Doc. 20). Although Plaintiff filed the complaint on a form for prisoners asserting claims under 42 U.S.C. §1983, jurisdiction in this court is based on diversity and does not concern claims arising out of Plaintiff's conditions of confinement. (See docs. 4 and 8). Presently at issue before the Court are two motions

---

[1] The Court previously dismissed other claims raised in the complaint for failure to state a claim against Defendants Self, Nelson, Booker and Lester. (Doc. 49).

to dismiss and/or for summary judgment. (Docs. 46 and 47). Plaintiff has not responded to either motion.

## I.     Allegations of the Third Amended Complaint (doc. 20)[2]

Plaintiff was injured on March 12, 1998, while working at Wakulla Correctional Institution and while in the custody of the Florida Department of Corrections. (Doc. 20, Exhibit 1). On March 18, 1998, Attorneys Douglas S. Lyons and William Bielecky (both named Defendants) met with Plaintiff at the institution. (*Id.*). At this visit, an Authority to Represent was signed by Plaintiff and Douglas Lyons. (Exhibit 2). Several letters were written on Plaintiff's behalf requesting the institution to provide adequate medical care (exhibits 3, 4 and 6), and then Defendant Lyons responded to Plaintiff by letter dated May 6, 1998, explaining his intentions with regard to filing suit and his hopes for settlement. (Exhibit 5). Defendant Lyons then wrote Plaintiff on August 12, 1998, acknowledging his continued lack of medical treatment and suggested that better medical attention could be sought after Plaintiff was released. (Exhibit 7). The letter also advised Plaintiff that a notice of intent to sue letter had been sent to the DOC, and that they would have six months to investigate and settle the case, or Plaintiff could sue. (Exhibit 7). The intent letter dated August 26, 1998, is addressed to Harry Singletary, Secretary of Florida DOC and Bill Nelson, Commissioner of Florida Department of Insurance. (Exhibit 8). The Department of Insurance responded by letter dated September 18, 1998, (signed by Defendant Rebecca Booker), enclosing a Disclosure

---

[2]  These facts were compiled primarily from the exhibits attached to the complaint and are taken from the Court's previous report and recommendation. (See Doc. 48).

**No. 4:02cv396-spm/ak**

Statement as required by law (signed by Defendant Trilly Lester), and requesting medical records and a list of witnesses to the injury. (Exhibit 9).

The next correspondence is dated November 16, 1998, from Defendant Lyons to Plaintiff, and indicates that there had been some previous correspondence from Plaintiff inquiring about certain medications. There is nothing in the partial copy submitted with the complaint that references the status of the lawsuit, except Defendant Lyons' admonition "to live your life and let your lawsuit take care of itself." (Exhibit 10).

In a letter dated January 25, 1999, from Defendant Lyons to Plaintiff he tells Plaintiff that he did not plan on filing a lawsuit until Plaintiff was released (which was apparently on April 21, 1999), and requests that Plaintiff come by the office when he got out of prison so that "we can make arrangements for the medical examinations that need to be done to prepare the pleadings for your case." (Exhibit 11).

Apparently Plaintiff was released and did make contact with Defendant Lyons because there are copies of emails dated May 11, 1999, concerning Plaintiff and a letter addressed to Plaintiff at a free world address asking that he execute an attached doctor's lien. (Exhibit 13, 14 and 15).

The next letter is dated October 8, 2001, and is addressed to Plaintiff at the same free world address as the previous letter (and Plaintiff's current address) and states:

> Some time back, you contacted me about pursuing an action against Wakulla Correctional Institution for injures you sustained while incarcerated there. I have not heard from you in sometime, and the purpose of this letter is to find out if you are still interesting in pursuing that claim. If so, please contact me at your earliest convenience. I hasten to advise you that there is a four year statute of limitations for claims arising out of personal injury. As a consequence, since your injuries were sustained on March 12, 1998, the statute of limitations in your claim will run on March 12, 2002. (Exhibit 16).

**No. 4:02cv396-spm/ak**

Plaintiff responded by letter dated November 17, 2001, to state that he was still interested in pursuing the claim, but he had failed to keep in touch because there were outstanding arrest warrants in South Carolina where he had moved upon his release, for which he had received a six year sentence. He was at that time apparently incarcerated and asked Defendant Lyons to correspond with him through his sister's address. He mentioned that the previous address belonged to his dad. (Exhibit 17).

Another letter referencing Defendant Lyons' October 8th letter is dated December 4, 2001, with a return address for Plaintiff at Manning Correctional Institution in Columbia, South Carolina, again expressing a desire to pursue the claim against Wakulla Correctional Institution. (Exhibit 18).

Defendant Lyons responded by letter dated January 8, 2002, that he would not be able to pursue Plaintiff's case because of "an overwhelming case load," and that he would assist him in obtaining counsel if he so requested, but that the statute of limitations would run on March 12, 2002. (Exhibit 19).

Plaintiff acknowledged this letter on January 17, 2002, and requested his file and some assistance in pursuing the case in federal court. (Exhibit 20).

On February 12, 2002, Plaintiff wrote Defendant Charles Farrar and stated that Defendant Lyons had not responded to his previous letter of January 17, 2002, and requested that Farrar secure his file for him so that he could file a lawsuit in federal court. (Exhibit 21).

On March 7, 2002, Defendant Lyons advised Plaintiff that he had filed suit on his behalf in state court because Plaintiff had been unable to obtain other representation.

**No. 4:02cv396-spm/ak**

(Exhibit 23). A copy of the complaint was attached to the letter and Defendant Lyons advised Plaintiff that he could amend the complaint as he sought fit and the filing of same should provide him with sufficient time to find new counsel. The letter also states: "As you requested, please find enclosed copies of all documents of yours in our possession." (Exhibit 23). The complaint asserts negligence claims against Defendants Walkulla Correctional Institution, the Florida Department of Corrections, and Wakulla County for failing to provide a safe work environment, failing to secure the boards on the scaffold, failing to provide hard hats, failing to provide adequate supervision, and insisting that scaffolding be moved when it was not in a proper condition to be moved. (Exhibit 23). The complaint is signed for Plaintiff by Defendant Douglas Lyons.

Plaintiff wrote on March 13, 2002, to Defendant Lyons and demanded his file and complained that since Lyons had told him he would no longer represent him he should not have signed his name to the complaint filed in state court. (Exhibit 25). Plaintiff also wrote to Defendant Charles Farrar on March 22, 2002, to advise him that his partner forged Plaintiff's name on a complaint and demanded that Farrar stop Lyons from committing more illegal acts.

On April 5, 2002, a letter from Dawn Sutton to Plaintiff advised that a copy of his entire file was enclosed and asked that he excuse the delay. (Exhibit 27).

Apparently, Plaintiff filed a complaint with the Florida Bar, and Defendant Lyons responded by letter dated May 20, 2002, to Edward Iturralde, Assistant Discipline Counsel of the Florida Bar, to explain his handling of Plaintiff's case. (Exhibit 28). Pertinent to the issues raised in this case, Defendant Lyons explains that once Plaintiff

**No. 4:02cv396-spm/ak**

got out of prison he "basically disappeared," and "I don't have anything in my file that reflects that Mr. Caulder did anything for 1 ½ years to get in contact with our office or to make any inquiry of our office concerning the status of his case or express any interest in pursuing his case." Defendant Lyons could not explain why he did not attempt to contact Plaintiff during this time period, except "at some point this file stopped appearing on the list of active files which are reviewed periodically" and that "there were also several changes in personnel after the original secretary who had been handling the matter." Defendant Lyons reiterated that he did not wish to represent Plaintiff "in large part because he has been incarcerated again," but stated that he would "re-double my efforts to try and find counsel willing to represent him." (Exhibit 28).

On June 25, 2002, Defendant Lyons wrote Plaintiff at Manning Correctional Institution that he had served the Defendants in the state court suit, but that he would not be doing anything further with the case and Plaintiff must handle the case himself or find counsel. (Exhibit 29). Attached summonses show that Nathan Thompson, Chairman of the Board of County Commissioners, and Officer Laura McDonald, at the Wakulla Correctional Institution, were served. (Exhibit 29). Plaintiff was advised by letter dated July 17, 2002, that Defendant Lyons was advised that Wakulla County had no role in the management of the prison and the county should be dismissed. (Exhibit 30). Defendant Lyons acknowledged a letter from Plaintiff on July 23, 2002, wherein Plaintiff apparently advised him that he had filed suit in federal court. (Exhibit 31). Lyons recommended that the state court action be voluntarily dismissed, and he asked that Plaintiff sign and return the enclosed Notice of Voluntary Dismissal. (Exhibit 31).

**No. 4:02cv396-spm/ak**

These recommendations were included in a letter from Lyons to Mr. Iturralde, wherein Lyons explains "Under the circumstances my filing a claim on his behalf here in Wakulla County was unnecessary."

On August 8, 2002, the Notice of Voluntary Dismissal Without Prejudice was signed for Plaintiff by Douglas Lyons. (Exhibit 32). A copy was forwarded to Mr. Iturralde.

Plaintiff advised Mr. Iturralde on August 14, 2002, that the Notice of dismissal was not signed or approved by him and he wanted Defendant Lyons' misconduct stopped. (Exhibit 33).

The federal lawsuit, Caulder v. Moore, Case No. 4:02cv95-RH/WCS, was filed *pro se* on March 8, 2002. After several attempts at filing a viable complaint, Plaintiff filed a third amended complaint asserting claims for denial of medical care pursuant to the Eighth Amendment, and that the institution did not protect his safety needs while he was working. It was recommended that Plaintiff's third amended complaint be dismissed because he failed to explain with any specificity how he was denied medical care and for failure to exhaust his claims concerning lack of safety. (Doc. 38). These recommendations were adopted (doc. 40), the case was dismissed (doc. 41), and Plaintiff's appeal to the Eleventh Circuit was dismissed for lack of jurisdiction. (Doc. 50).

II. **Summary Judgment Standard**

On a motion for summary judgment Defendant has the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If he

**No. 4:02cv396-spm/ak**

does so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, <u>Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). However, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor." <u>WSB-TV v. Lee</u>, 842 F.2d 1266, 1270 (11th Cir. 1988).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

### III. Defendant Bielecky's Rule 56(e) evidence

    a) <u>Affidavit of William Bielecky</u>

**No. 4:02cv396-spm/ak**

Defendant Bielecky attests that he assisted Defendant Douglas Lyons in his representation of Plaintiff and met with Plaintiff on March 18, 1998, but that Lyons was at all times lead counsel on the case and Bielecky did not sign the contract of representation. (Doc. 46). Bielecky was in his third month of practice and was leasing space from Lyons and working with him on several cases. In August 1998, Bielecky delivered a letter to Plaintiff advising him that he was withdrawing from the case and was no longer associated with the law firm of Lyons & Farrar. He does not have a copy of that letter, but asserts that Plaintiff acknowledges receiving such a letter in later correspondence. (Doc. 46, Exhibit 3). Several letters were exchanged about Plaintiff being unhappy with Lyons to which Bielecky responded that Plaintiff should seek new counsel, but that Bielecky would not be able to represent him. In a letter dated July 28, 2002, Plaintiff wrote Bielecky threatening him and asking him to be truthful about alleged misconduct with regard to his case. Bielecky responded that he knew of no misconduct and had nothing to do with the law firm of Lyons & Farrar since he left in August 1998. Bielecky received one more letter from Plaintiff dated August 27, 2002, which again acknowledged his withdrawal as counsel, but Plaintiff asserted that Lyons had requested Bielecky to represent him, which Bielecky denies. Bielecky did not respond to this letter because it, too, had a threatening tone to it, and he had fully complied with the Florida Bar Rules in withdrawing his representation and knew of no illegal activity related to the lawsuit.

     b)    <u>Letter from Plaintiff to Bielecky dated January 21, 1999</u>

**No. 4:02cv396-spm/ak**

Plaintiff wrote to Bielecky that Lyons had not been responding to his letters and that he had been forced to work at Tallahassee Road Prison with weed eaters and bush axes and he was in pain. He also describes a hand injury he incurred because he was unable to grip the bush axe and that he continued to request light work detail, but continued to be assigned to the road crew. He declared a medical emergency and received disciplinary confinement for it. Plaintiff asks for help.

  c) <u>Letter from Bielecky to Plaintiff dated February 3, 1999</u>

Bielecky informed Plaintiff that he had no idea why Lyons had not responded to Plaintiff's letters and advised Plaintiff again that he was no longer associated with Lyons and because he understood that Lyons was still Plaintiffs' attorney, Bielecky could not represent him. Bielecky advised Plaintiff that he would forward the letter to Lyons, but that he might consider retaining another attorney.

  d) <u>Letter from Plaintiff to Bielecky dated February 9, 1999</u>

Plaintiff acknowledges Bielecky's letter and thanks him for the suggestion. He also asks several questions about his case, whether a bill of discovery had been filed, whether the State of Florida and DOC had been put on notice of intent to sue, and whether Lyons could have him sent to see outside doctors.

  e) <u>Letter from Bielecky to Plaintiff dated February 24, 1999</u>

Bielecky responds that he does not know what has been done in Plaintiff's case and again suggests that he obtain other counsel. Bielecky told Plaintiff again that he could not represent him.

  f) <u>Letter from Plaintiff to Bielecky dated July 2002</u>

**No. 4:02cv396-spm/ak**

Plaintiff acknowledged being told that Bielecky no longer represented him, was no longer associated with Lyons & Farrar, and that he had advised Plaintiff to obtain new counsel. Plaintiff told Bielecky that he was obligated to follow the Florida Bar Rules and to uphold the law, and then he asked if Bielecky knew about any illegal activity by Lyons and was that why he suggested that Plaintiff seek new counsel. Plaintiff threatened Bielecky with disciplinary and criminal charges.

      g)     <u>Letter from Bielecky to Plaintiff dated August 12, 2002</u>

Bielecky advised Plaintiff that he had no contact with Lyons since January 1, 1999, and had no knowledge of any illegal activity during his involvement with Plaintiff's case or afterwards.

      h)     <u>Letter from Plaintiff to Bielecky dated August 27, 2002</u>

Plaintiff asks Bielecky to tell him honestly why he suggested that Plaintiff seek new counsel.

## IV.  Defendant Lyons, Lyons and Farrar's Rule 56(e) evidence

Defendants Lyons, Lyons, Farrar and Sutton did not provide additional evidence and refer to the exhibits attached to the complaint for support. These exhibits have been detailed in Section I above.

## V.  Analysis

The elements of a legal malpractice claim under Florida law are: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) proof that the neglect of a reasonable duty is the proximate cause of a loss to the client. <u>Kates v. Robinson</u>, 786 So.2d 61, 62 (Fla. App. 4 Dist. 2001). Legal malpractice claims

**No. 4:02cv396-spm/ak**

are based on both tort and contract law.  <u>Resolution Trust v. Holland & Knight</u>, 832 F.Supp. 1528 (S.D. Fla. 1993).

The Court is of the opinion that the first element is determinative of the claims against Defendants Marsha Lyons, Charles Farrar, William Bielecky and Dawn Sutton. The only two signatories to the contract for legal representation are Defendant Douglas Lyons and Plaintiff.  Plaintiff has offered no proof that Marsha Lyons, Charles Farrar or William Bielecky were employed by him as counsel of record.  Although Bielecky admits to working on Plaintiff's case, he clearly took steps which were acknowledged by Plaintiff as withdrawing from any representation he may have undertook on Plaintiff's behalf.  At the time Bielecky left the offices of Lyons & Farrar, there was no suit filed, and therefore no tribunal to approve his withdrawal.

Plaintiff's claims against Marsha Lyons and Charles Farrar are based on their association with the law firm.  Marsha Lyons wrote one letter to Plaintiff, dated February 9, 1999, which states, "I regret to tell you that we are not in a position to handle your case...But I might suggest that you start out by writing to the American Civil Liberties Union." (Doc. 20, Exhibit 12).  Defendants explain that Plaintiff had contacted Ms. Lyons about a civil rights matter wholly unrelated to the personal injury suit at issue, hence her response that he might contact the ACLU.  The only proof with regard to Plaintiff's relationship with Farrar are two letters written by Plaintiff to him complaining about actions or inactions taken by Douglas Lyons.  (Doc. 20, Exhibits 20 and 26).  The only proof with regard to Dawn Sutton, who is not an attorney, is her signature on a letter accompanying his file in which she apologizes for any delay.  (Doc. 20, Exhibit

**No. 4:02cv396-spm/ak**

27). Consequently, there is no proof that any of these Defendants were ever employed by Plaintiff as attorneys on his behalf, and the claims against them should be dismissed.

However, Defendant Douglas Lyons was clearly employed by Plaintiff as attorney of record. Lyons contends that he informed Plaintiff that he would wait to file suit until Plaintiff was released from prison, but he ultimately filed suit on Plaintiff's behalf in state court because the statute of limitations was running. (Doc. 20, Exhibit 23). He contends that he dismissed the state court action when he was advised that Plaintiff had filed suit in federal court because the state court suit was "based on the same events as the suit filed by Mr. Caulder in Case No. 4:02CV95-RH, which was dismissed by this Court in September of 2003, for failure to state a claim and failure to exhaust administrative remedies." Defendant Lyons adds that he "urged [Mr. Caulder] to sign the Notice of Voluntary Dismissal, but that Caulder refused to do so. As a result, Mr. Lyons signed his own name, dismissing the [state court] matter." (Doc. 47, p. 4-5).

Mr. Lyons description of these events raises serious issues with regard to the second element of a legal malpractice claim--the neglect of a reasonable duty.

On March 7, 2002, Mr. Lyons wrote Plaintiff that he had filed suit on his behalf and attached a copy of the complaint, which asserts negligence claims against Defendants Walkulla Correctional Institution, the Florida Department of Corrections, and Wakulla County for failing to provide a safe work environment, failing to secure the boards on the scaffold, failing to provide hard hats, failing to provide adequate supervision, and insisting that scaffolding be moved when it was not in a proper condition to be moved. (Exhibit 23). The complaint is signed for Plaintiff by Defendant

**No. 4:02cv396-spm/ak**

Douglas Lyons. Although Mr. Lyons alerted Plaintiff that he would need to find new counsel, he did not move to withdraw as counsel and get court approval as required by Rule 4-1.16, Florida Bar Rules. This rule also provides that withdrawal may be sought only if it can be accomplished without adverse effect on the interests of the client.

Mr. Lyons wrote Plaintiff again on June 25, 2002, stating that he had served the defendants in the state court action, but that Plaintiff would need to obtain new counsel or handle the matter himself. (Doc. 20, Exhibit 29). Again, Lyons did not move to withdraw as counsel of record and obtain court approval. At this point in the state court proceeding, he had prepared and signed a complaint on Plaintiff's behalf as his legal representative and had a contract of employment with Plaintiff.[3]

When Plaintiff advised Mr. Lyons in July 2002, that he had filed suit in federal court, Mr. Lyons asked him to sign and return a Notice of Dismissal of the state court action. (Doc. 20, Exhibit 31). Mr. Lyons *admits* that Plaintiff refused to sign the dismissal, so he signed it for him. This action is directly contrary to Rule 4-1.2, Florida Bar Rules, which requires that an attorney abide by his client's decisions with regard to the objectives of that representation. Florida courts have held that attorneys faced with such a situation (in the context of pursuing a criminal appeal) must do one of the following: (1) either secure their client's permission to dismiss; (2) advise their client to

---

[3] The Statement of Client's Rights, attached to the contract with Plaintiff, advised him that, "If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case." (Doc. 20, Exhibit 2). While this statement specifically excepts itself from being part of the contract, it fairly apprises Plaintiff of the Florida Bar rules regarding withdrawal.

**No. 4:02cv396-spm/ak**

obtain other counsel while taking steps to avoid foreseeable prejudice to the client's rights; or (3) move to withdraw from the case. Ojeda v. Moore, 805 So. 2d 812 (Fla. App. 3 Dist. 2000); Harold v. State, 450 So.2d 910 (Fla. App. 5 Dist. 1994). Although these decisions were made in the context of private attorneys filing criminal appeals, the undersigned is of the opinion that the situation is analogous to the present situation. Defendant Lyons was faced with pursuing a case he did not wish to pursue any longer and the proper course, when it was clear his client was not going to agree to dismiss the lawsuit, was to move to withdraw or hold the course until Plaintiff obtained new counsel. Under no circumstances was it appropriate to dismiss the case without his client's permission. Ojeda, 805 So.2d at 814. See also The Florida Bar v. Nemec, 390 so.2d 1190 (Fla. 1980) (attorney subject to disciplinary action for signing voluntary dismissal of lawsuit without client's permission); and The Florida Bar v. Fitos, 522 So.2d 369 (Fla. 1988) (same).

Further, the decision to dismiss was based on Mr. Lyons' erroneous determination that the state court action was the same as the federal court action, and therefore, unnecessary.[4] The state court suit was a personal injury action based on state tort law. The federal suit was based on the Eighth Amendment of the United States Constitution and Plaintiff's status as a prisoner, with its attendant requirement of exhaustion of administrative remedies, pursuant to 28 U.S.C. §1997e.[5] A review of the

---

[4] By this time, Mr. Lyons had been advised that he had sued the wrong defendants in the state court action. (Doc. 20, Exhibit 30).

[5] Section 1997e(a) provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

**No. 4:02cv396-spm/ak**

complaint filed in the federal action, Case No. 4:02CV95-RHh/WCS, shows that Plaintiff raised the issues of unsafe work conditions as alleged in the state court action, but these claims were interpreted in the context of an Eighth Amendment claim of denial of safety needs and were dismissed because Plaintiff had not exhausted them in the prison grievance system.  No doubt he did not exhaust these claims because his attorneys were pursuing these claims on his behalf and were in the process of complying with state court procedures for filing tort actions against the state.  (See Doc. 20, Exhibits 7 and 8) (Plaintiff advised that Notice of Intent to Sue letter had been filed). Although it was found that Plaintiff exhausted the denial of medical care claims, he failed to state with specificity who denied him care such that these claims, too, were dismissed since a deliberate indifference to medical care claim must be based on the subjective intent of the persons alleged to have denied care.  See Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).  The hurdles encountered by Plaintiff in pursuing his federal claims would not have been an issue in the state court action, and whether or not he would have succeeded under state law was foreclosed by Mr. Lyons' action in dismissing the suit, which was clearly not authorized by Plaintiff.  Therein lies the third and final element of a legal malpractice claim--the loss to Plaintiff occasioned by his attorney's neglect of duty.

---

remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This requirement is mandatory, and may not be waived.  Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998).

**No. 4:02cv396-spm/ak**

Thus, Defendant Lyons has failed to carry his burden to demonstrate an absence of evidence to support Plaintiff's case, and therefore, the motion to dismiss, construed as one for summary judgment, should be denied as to the claims against Defendant Douglas Lyons.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant Bielecky's Motion (doc. 46) be **GRANTED**, and that the motion (doc. 47) of Defendants Douglas S. Lyons, Charles O. Farrar, Marsha Lyons and Dawn Sutton be **GRANTED IN PART**, insofar as the claims against Charles Farrar, Marsha Lyons and Dawn Sutton should be **DISMISSED**. The motion should be **DENIED IN PART**, insofar as Plaintiff's claims against Defendant Douglas Lyons should be remanded to the undersigned for further proceedings.

**IN CHAMBERS** at Gainesville, Florida, this 14th day of April, 2005.

s/ A. KORNBLUM
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 4:02cv396-spm/ak**